ALBANY,
February, 1809.

Weldon &
Furniss
v.
Buck & another.

Where a foreign bill of exchange is protested for non-acceptance, the holder, on giving due notice thereof, may commence an action against the drawer or indorser, on the protest for non-acceptance, without waiting for a protest for non-payment, and may recover, besides the amount of the bill, 20 *per cent.* damages, with the usual interest and charges of protest.

### WELDON and FURNISS *against* BUCK and BUCK.

THIS was an action of *assumpsit* brought by the plaintiffs, who reside in *Great Britain*, on a bill of exchange drawn by *Robinson*, of *St. Kitts*, in the *West-Indies*, in favour of *Freeman*, on *Worswick* and *Allman*, of *Lancaster*, in *England*, for 260*l.* sterling, payable in 90 days after sight. The bill was indorsed by *Freeman* and by the defendants. The bill was protested for non-acceptance, on the 23d *May*, 1806, but no demand of payment, or protest for non-payment, was made, until four days after the days of grace had expired. Due notice of the non-acceptance was given to the defendants on the 2d *August*, 1806, and the protest stated the refusal to accept, to be for want of funds. The declaration was on the protest for non-acceptance only.

The bill was purchased here by an agent of the plaintiffs, for the purpose of remitting money, in his hands, to them. The plaintiffs, on the protest of the bill, returned it to the agent in *New-York*, but not until after the time for its payment had expired, nor was any suit brought until after the bill was returned. The plaintiffs had authorised their agent to remit to them in bills.

The cause was tried at the *New-York* sittings, the 8th *June*, 1808, before Mr. Justice *Van Ness*, when the jury found a verdict for the plaintiffs for 1,594 dollars, which included the amount of the bill, 20 *per cent.* damages, the charges of protest, and interest.

A motion was made to set aside the verdict; and two questions were raised for the consideration of the court.

1. Whether the plaintiffs were entitled to recover; and if so,

2. Whether they were entitled to the 20 *per cent.* damages, and the expenses of protest.

*Hawes*, for the defendants. 1. The protest for non-acceptance alone, is not sufficient to enable the plain-

tiff to recover the amount of the bill, unless he has used due diligence to present it for payment, at the time it was made payable. This is a part of his undertaking, and he ought to retain the bill in order to present it for payment.* It is true, that on a protest for non-acceptance, the holder has a qualified right of action, liable, however, to be defeated by a subsequent payment, or neglect of the holder. I am aware of the decision in *Mason & Smedes* v. *Franklin*,† but that case went no farther than that the holder had a right of action against the drawer, on a protest for non-acceptance. If the law requires the holder to retain the bill, after a protest for non-acceptance, it must be for the purpose of presenting it for payment; but this would be useless, if the holder's right of action was absolute and perfect, on a protest for non-acceptance only. And the retaining of the bill may be very injurious to the indorsers. If the holder meant to rely on the protest for non-acceptance, he ought not to have retained the bill for 90 days; and by doing so, and not presenting it, until four days after the expiration of the days of grace, he has made it his own. If the holder of a bill neglects to demand payment when it is due, he makes it his own.‡

2. The bill was remitted in payment of a debt, and the holder is not, therefore, entitled to damages. Damages are only recoverable on a protest for *non-payment.*

*Colden,* contra. 1. The first question was settled in the case of *Mason & Smedes* v. *Franklin.* It was decided, that the holder had a good cause of action on the protest for non-acceptance, which could not be defeated by any subsequent irregularity or neglect, in the demand of payment, or in the protest for non-payment. The notice of non-acceptance, is always sufficient to guard the drawer against surprise, and to enable him to draw his funds out of the

ALBANY,
February, 1809.

Weldon &
Furniss
v.
Buck & another.

* *Chitty,* 180, 181.

† 3 *Johns. Rep.* 202.

‡*Lovelass,*80,81.

hands of the drawee. If he has no funds, no notice or protest is necessary.

2. It has been always understood, that when a party is entitled to recover the principal, he is entitled to interest and damages. Wherever a party is entitled to re-exchange, he is entitled to damages ; for the latter is only another name for re-exchange, which is the price paid by the holder of a protested bill for the money he receives for a bill redrawn on the party from whom he received the first bill, or on some other person.* This premium or expense will, of course, vary with the rate of exchange between the two countries ;† but to avoid all questions about the re-exchange, the rule of damages has been arbitrarily fixed, in all cases, at 20 per cent.‡

* Chitty, 298.
Pothier, de Change, ch. 4. §
2. n. 64, 65, 66, 67. Evans's Essays, 57, 58.
† 2 Hen. Black. 678.
‡ See ante, p. 117.

Hoffman, in reply. 1. This is a suit against an indorser, and he ought not to be affected by a protest, for want of effects. The cases which have been cited, were against the drawer. A protest for non-acceptance gives a right of action defeasible by subsequent events. Thus the capture, or loss, of a vessel, gives a right of abandonment ; but if before the right is asserted, the vessel should be recovered and in safety, the right will be defeated. Suppose the bill had been actually paid in England, before the right of action on the protest for non-acceptance had been asserted, would not the action be defeated by such payment ? The opinion of the Chief-Justice, in Mason & Smedes v. Franklin, may be regarded as an obiter dictum, as that was not the precise point before the court.

2. If, as has been contended, the 20 per cent. damages are allowed for the re-exchange, then they can be recovered only on a protest for non-payment, for until then the holder has no right to redraw. The act of Pennsylvania, from which the rule as to the 20 per cent. damages is derived, directs the damages to be paid on a protest for non-payment. As the plaintiff grounds his right to a recovery on the protest for non-acceptance only, he must be content with the principal and interest, and cannot claim the damages.

Van Ness, J. delivered the opinion of the court. The plaintiffs' right to recover is denied, on the ground that they were bound to present the bill for payment, and to have the same presented for non-payment, notwithstanding it had previously been protested for non-acceptance. There are some *dicta* to give colour to this objection, but they are neither supported by adjudged cases, nor well founded in principle. A notion once obtained in *England*, that in certain cases the holder, by having the bill protested for non-acceptance, could oblige the drawer or indorser to give security for the payment of it when it fell due; (*Cunningham on Bills*, 42. *Marius*, 117.) and protests for non-acceptance in *France*, even now, are nothing more than protests for security. This is probably the origin of the doctrine urged by the counsel for the defendant on this occasion.

When the nature of the undertaking of the drawer, and of those who subsequently give currency to a bill, is considered, it will be difficult to discover any good reason why the holder should be compelled to demand payment after acceptance has been refused. The obligation of the drawer and indorser is not only for the payment, but the due acceptance of a bill. The inconvenience and disappointment to the holder generally are the same, whether they arise from the one or the other. Upon the non-acceptance of a bill, the holder is bound, in most cases, to give immediate notice to the drawer, so that he may withdraw his property out of the hands of the drawee.

Suppose, then, that the drawer, in consequence of this notice, as it is to be presumed he will do, actually withdraws his funds from the hands of the drawee, before the bill falls due, (and such a case may easily occur,) would it not be absurd to require the holder to present the bill for payment, when there is almost a certainty that payment will be refused?

It is admitted by the counsel for the defendant, that the holder has a right to *commence* a suit upon the protest for

ALBANY,
February, 1809.

Weldon &
Furniss
v.
Buck & another.

non-acceptance; but it is insisted, that if he omits to present the bill for payment, such omission would be a good defence against a *recovery*. Suits upon the protest for non-acceptance only, in *England*, are very common, and such a defence has never, that I know of, been attempted. Suppose a bill, payable at a very long sight, and that a suit should be brought on the protest for non-acceptance against the drawer or indorser, and the money collected before the bill becomes payable, it will not be pretended that the money could be recovered back, if the holder had neglected to present the bill for payment.

It was said, that the bill may be paid, notwithstanding acceptance may be refused, and that by permitting the holder to recover against the drawer, before the bill has been presented for payment, he may obtain the money from both drawer and drawee. Admitting this to be so, it does not prove the right of action against the drawer to be merely inchoate. But the answer to this argument is, that the drawer might avail himself of the payment made by the drawee in his defence.

This question, however, was put at rest by a recent decision of this court, after full consideration, in the case of *Mason & Smedes* v. *Franklin*. (3 *Johns. Rep.* 204.)

In that case, as in this, it was contended, that the right of action on the protest for non-acceptance, was merely inchoate, and became perfect only after protest for non-payment. The court held, " that a good cause of action arose upon " the protest for non-acceptance, and even if it were ad- " mitted that the *subsequent demand of payment and protest* " *for non-payment*, were void acts, they would not destroy " the right to recover which had *previously vested.*" This decision is fully supported by authority, and will hereafter be regarded, I trust, as the settled law. The qualification of this right, now set up, I do not find to have ever been before suggested. In *Bright* v. *Purrier*, (*Bul. N. Prius*, 269.) the defendant offered to prove, that by the custom of merchants he was not liable *at all*, till the bill fell due; but Lord *Mansfield* overruled the evidence. In *Chilton* v.

*Whiffen & Cromwell,* (3 *Wil.* 17.) Chief-Justice *Wilmot* gives a corrected report of the case of *Macarthy* v. *Barrow,* in 2 *Str.* 949. In that case, the court said, " that the " non-acceptance or protest did not raise any debt. That " the drawer, *instantly* upon his drawing the bill, contracts " a debt, and that a protest is nothing but a notice that the " drawer will not pay it ; that it is *debitum in presenti,* sol- " *vendum in futuro.* And the obligation to pay arises as " well *upon the protest for non-acceptance,* as for non-pay- " ment." To the same effect is the case of *Milford* v. *Mayor,* *(Doug.* 54.) and the more recent case of *Ballingalls* and another v. *Gloster.* (3 *East,* 481.)

ALBANY,
February, 1809.

Welden &
Furniss
v.
Buck & another.

The plaintiffs' right to recover being, as I think, perfectly clear, the next question is, whether they are entitled to recover the 20 *per cent.* damages. This point has already, in a great measure, been disposed of ; for if the plaintiffs' right of action was complete and perfect, when they commenced this suit, this bill having been remitted in the usual course of business, it appears to me to follow as a necessary consequence, that they are entitled to recover the damages. The law allowing damages to the holder of a dishonoured bill, was dictated by reasons of commercial policy, which apply with equal force to the case of a bill protested for non-acceptance as to that of a protest for non-payment. The amount of the damages, in other countries, depends upon the rate of exchange. This was so uncertain and fluctuating, that in this state, by the custom of merchants, another rule was introduced, the object of which was to reduce the amount of damages upon returned bills, to a sum certain. It was said, that the right to demand damages arises only upon the protest for non-payment, and that there is no case in which they have been allowed, when the suit was founded upon the protest for non-acceptance only. I have not met with any express adjudication upon this point, but if any distinction of this kind existed, is hardly possible that it would not have been recognised in some of the cases which have been

mentioned. I, however, find no such distinction, nor can I conceive of any good reason to be assigned for its adoption. (2 *Hen. Bl. Rep.* 378. *Mellish* and another v *Simeon.*)

The opinion of the court, therefore, is, that the plaintiff is entitled to recover the amount of the bill, the 20 *per cent.* damages, with the usual interest, and also the expenses of the protest for non-acceptance, and judgment must be entered accordingly.

Judgment for the plaintiff.